UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY STALLWORTH

        Plaintiff,                          Case No. 16-cv-10696
                                                  Hon. Matthew F. Leitman

v.

SCOTT CHAMPINE, *et al.*,

        Defendants.
_____/

## OPINION AND ORDER (1) GRANTING DEFENDANT JAMES FARRIS' MOTION FOR SUMMARY JUDGMENT (ECF #40); (2) GRANTING IN PART AND DENYING IN PART DEFENDANT SCOTT CHAMPINE'S MOTION FOR SUMMARY JUDGMENT (ECF #43); AND (3) DISMISSING CLAIMS AGAINST DEFENDANT CITY OF FERNDALE

In this action, Plaintiff Larry Stallworth alleges Defendant police officers Scott Champine and James Farris violated his Fourth Amendment rights and caused him physical injury during a traffic stop. (*See* First Am. Compl., ECF #14.) Defendants have now moved for summary judgment. (*See* ECF ## 40, 43.) For the reasons that follow, the Court **GRANTS** Defendant Farris' motion and **GRANTS IN PART** and **DENIES IN PART** Defendant Champine's motion.[1]

_____

[1] Stallworth also brought claims against the City of Pleasant Ridge and the City of Ferndale. (*See* First Am. Compl., ECF #14.) On January 5, 2018, the Court entered a Stipulated Order in which Stallworth dismissed his claim against the City of Pleasant Ridge with prejudice. (*See* ECF #57.) Stallworth has also abandoned his claim against the City of Ferndale. (*See* Stallworth Resp. Br., ECF #45 at Pg. ID

On March 1, 2014, Stallworth was at a nightclub in the City of Ferndale when another man, Francis Thomas, offered to drive Stallworth home. (*See* Stallworth Dep. at 138, ECF #45-2 at Pg. ID 137.)  Stallworth accepted Thomas' offer, and the two of them left in Thomas' Lincoln Towncar. (*See id.* at 138, 140, Pg. ID 137.)  Stallworth sat in the back seat as Thomas drove. (*See id.*)

Defendant Champine, a City of Pleasant Ridge police officer, witnessed Thomas driving erratically as Thomas was traveling northbound on Woodward Avenue. (*See* Champine Dep. at 21-24, ECF #43-5 at Pg. ID 687.)  He pulled his marked police car behind Thomas' vehicle, activated his police lights, and effectuated a traffic stop. (*See id.* at 28-29, Pg. ID 688-89.)

Thomas had been drinking and did not have a valid driver's license, and he was concerned about facing possible criminal charges as a result of his driving. (*See* Thomas Dep. at 24-25, 29-31, ECF #54-2 at Pg. ID 1262-63, 1264.)  So, once Thomas brought his vehicle to a complete stop, he "jumped over" to the front passenger seat, "grabbed [Stallworth] up under [his] arms[,] and pulled [Stallworth] into the front [driver's] seat." (Stallworth Dep. at 141, ECF #45-2 at Pg. ID 866.)

---

827.)  Accordingly, through this Opinion and Order, the Court **DISMISSES** Stallworth's claim against the City of Ferndale with prejudice.

Champine saw Thomas and Stallworth switch places, and he called for backup. (*See* Champine Dep. at 33-35, ECF #43-5 at Pg. ID 690.) Champine explained that he "needed the backup" because he was "working by [him]self," and the seat switching signaled to him that "somebody didn't want to be seen as the driver." (*Id.* at 35, Pg. ID 690.) Shortly after Champine called for assistance, Defendant Farris, a City of Ferndale police officer, arrived on the scene. (*See id.* at 38, Pg. ID 691.)

Farris asked Stallworth to exit the vehicle, and Stallworth did so on his own. (*See* Stallworth Dep. at 144, 181-82, ECF #45-2 at Pg. ID 866, 876.) Stallworth says that after he stepped out of the car, Farris "grabbed" his arm so hard that his hearing aide fell out, "turned [him] around," and handcuffed him. (*Id.* at 146 180, Pg. ID 867, 875.) Farris then "pushed [Stallworth] towards the car and started patting [him] down." (*Id.* at 147, Pg. ID 867.) Once Farris completed the pat down, he again grabbed Stallworth's arm – hard enough to leave a "red" mark – and placed Stallworth into the back seat of an unoccupied police car. (*Id.* at 157-58, Pg. ID 870.)

Stallworth says that Champine later entered the police car and sat in the front seat.[2] (*See id.* at 174, 220, Pg. ID 874, 885.) Stallworth says that he immediately told Champine that the handcuffs were injuring his wrists. (*See id.*) Champine did not respond to Stallworth's complaints. Instead, after the passage of some

---

[2] Champine denies that he was ever in a police car with Stallworth.

3

undetermined period of time, and near the end of the stop, either Champine or Farris took the cuffs off.[3]

Champine eventually issued Stallworth a misdemeanor ticket for interfering with a police officer, and Champine then drove Stallworth home. (*See id.* at 176, 189-90, Pg. ID 874, 878.)  The state court ultimately dismissed Stallworth's ticket after two preliminary hearings. (*See id.* at 230-31, Pg. ID 888.)

## II

Stallworth filed this action on February 26, 2016.  (*See* ECF #1.)  He amended his Complaint on August 29, 2016. (*See* ECF #14.)  In the First Amended Complaint, Stallworth brings the following constitutional claims pursuant to 42 U.S.C. § 1983:

- Excessive force against Defendants Farris and Champine;

- Unreasonable seizure/false arrest against Defendant Champine; and

- Malicious prosecution against Defendant Champine.[4]

Defendants moved for summary judgment on July 10, 2017, and July 31, 2017. (*See* ECF ## 40, 43.)  The Court held a hearing on the motions on January 8, 2018.

---

[3] At one point during his deposition, Stallworth appeared to testify that Farris removed the cuffs. (*See*, *e.g.*, Stallworth Dep. at 188-89, ECF #45-2 at Pg. ID 877-78.)  At another point, Stallworth appeared to testify that Stallworth removed them. (*See id.* at 189-90, Pg. ID 878.)

[4] As noted in footnote one above, Stallworth also brought constitutional claims against the City of Ferndale and the City of Pleasant Ridge.  He has dismissed and/or abandoned those claims.

## III

Defendants argue that they are entitled to summary judgment under Federal Rule of Civil Procedure 56. A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...." *Id.* at 255.

Defendants also assert that they are entitled to qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Green v. Throckmorton*, 681 F.3d 853, 864 (6th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

"Once raised, it is the plaintiff's burden to show that the defendant[ ] [is] not entitled to qualified immunity." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

The Sixth Circuit Court of Appeals "has generally used a two-step [qualified immunity] analysis: (1) viewing the facts in the light most favorable to the plaintiff, [the court] determines whether the allegations give rise to a constitutional violation; and (2) [the court] assesses whether the right was clearly established at the time of the incident." *Id.* (internal punctuation omitted). "[U]nder either prong [of this inquiry], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Indeed, in *Tolan*, the Supreme Court vacated a grant of summary judgment on a qualified immunity defense because, among other things, the lower court "credited the evidence of the party seeking summary judgment and failed to properly acknowledge key evidence offered by the party opposing that motion." *Id.* at 1867–68. The Supreme Court explained that "[b]y weighing the evidence and reaching factual inferences contrary to [the non-moving party's] competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Id.* at 1867. Simply put, "where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Green*, 681 F.3d at 864.

**IV**

**A**

In Stallworth's First Amended Complaint, he alleges that Defendant Farris subjected him to excessive force in two respects. The evidence in the record is insufficient to support a viable Fourth Amendment claim with respect to either alleged use of force.

Stallworth first alleges that "[w]hile [he] was complying with [Farris'] request [to step out of Thomas' car], [] Farris violently grabbed [his] arm and pulled [him] out of the vehicle." (First Am. Compl. at ¶15, ECF #14 at Pg. ID 69.) But, as Stallworth's counsel candidly acknowledged at oral argument, this alleged act did not occur. Indeed, Stallworth testified at his deposition that he stepped out of Thomas' car *on his own* and that Farris did not make physical contact with him until *after* he had exited the vehicle. (*See* Stallworth Dep. at 144, 146, 148-49, ECF #45-2 at Pg. ID 866-68.) Because Stallworth now acknowledges that Farris never "pulled [him]" out of the car, Stallworth cannot maintain a claim related to this alleged act of excessive force.

Stallworth next alleges that Farris "handcuffed [him] extremely tightly … causing him pain." (First Am. Compl. at ¶¶ 18-19, ECF #14 Pg. ID 70.) In order to maintain an excessive force claim related to "unduly tight or excessively forceful handcuffing," a plaintiff must "offer sufficient evidence to create a genuine issue of

material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015) (internal punctuation and citation omitted). Stallworth's claim against Farris fails because Stallworth never complained to Farris about the tightness of the handcuffs.

Indeed, in the First Amended Complaint, Stallworth does not even allege that he complained *to Farris* about the handcuffs. Instead, he alleges that "[o]n no less than three occasions, [he] told *Defendant Champine* that the handcuffs were too tight and were causing him pain." (First Am. Compl. at ¶19, ECF #14 at Pg. ID 70; emphasis added.) Moreover, Stallworth *admits* that he did not complain to Farris about the tightness of the handcuffs. In fact, Stallworth testified that he never spoke to Farris after Farris placed Stallworth in a police car:

> Q: Okay. At any time did you say anything to the handcuffing officer?
>
> A: No. That officer – […] told me don't say anything and I didn't say nothing.
>
> Q: Okay. So if I understand what you've told me, from the time you got out of the Lincoln to the time that you had your handcuffs taken off, you never actually spoke to the handcuffing officer, is that accurate?
>
> A: Yes.

(Stallworth Dep. at 189, ECF #45-2 at Pg. ID 878.)

Stallworth directs the Court to a different portion of his testimony that, he says, establishes that he *did* complain to Farris about the handcuffs:

> I didn't say nothing at all, and then the only time when I was talking it was inside the car when I was trying to get *the officer's* attention that it feels like it's hurting my arm. The handcuffs were hurting me.

(*Id.* at 161, Pg. ID 871; emphasis added.) Stallworth now maintains that "the officer" he referenced is Farris. (*See* Resp. to Mot. to Dismiss, ECF #45 at Pg. ID 815.)

However, Stallworth's answers to careful follow-up deposition questions by Farris' counsel confirmed that the "officer" referenced by Stallworth was Champine, not Farris. In response to these questions, Stallworth testified that the only officer who was ever "in the car" was Champine and that he "never actually spoke" with Farris after he was handcuffed (which occurred before he was placed "in the car"). (Stallworth Dep. at 164, 166, 172, 189, ECF #45-2 Pg. ID 871-73, 878.) Stallworth simply has not produced any competent evidence that he ever told Farris that his handcuffs were too tight. Accordingly, Farris is entitled to summary judgment on Stallworth's excessive force claim related to the handcuffs.

**B**

In Stallworth's response to Farris' summary judgment motion, Stallworth asserts that Farris subjected him to two additional incidents of excessive force. Stallworth says that Farris "violently grabbed" him after he exited Thomas' car and forced his "right arm behind [his] back," causing "immediat[e]" pain. (Stallworth

Resp. Br., ECF #45 at Pg. ID 814.)  Stallworth also says that after Farris handcuffed him, Farris "forcefully grabbed [him] by the right arm and forced him into the backseat" of a police car. (*Id.* at Pg. ID 815.)  These new claims against Farris fail for two reasons.

First, neither of these incidents of excessive force are pleaded in the First Amended Complaint.  A plaintiff may not "expand [his] claims to assert new theories … in response to [a] summary judgment [motion]." *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). *See also Tucker v. Union of Needletrades, Indus. and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (same).  Moreover, Stallworth has not moved to amend the First Amended Complaint to add these new claims. *See Tucker*, 407 F.3d at 788 ("At the summary judgment stage, the proper procedure for [a] plaintiff[] to assert a new claim is to amend the complaint in accordance with Rule 15(a)").  Nor would the Court be inclined to grant leave to add these claims at this late date.  Stallworth has no justification for failing to raise these alleged incidents of excessive force earlier.  Indeed, these new alleged incidents were not hidden from Stallworth or uncovered for the first time during discovery.  On the contrary, Stallworth's allegations concerning these incidents are based on his personal knowledge of his interaction with the officers – knowledge that Stallworth had long before he filed his initial

Complaint. Stallworth may not avoid summary judgment by raising new claims now that he should have raised long ago and well before the close of discovery.

Second, and in any event, even if the Court treated these two new alleged incidents of excessive force as part of this case, Farris would still be entitled to summary judgment. The determination as to whether a police officer has exerted excessive force during the course of a seizure is reviewed "under the Fourth Amendment's objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "[T]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted). The Court must analyze this conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Three factors guide the Court's determination of whether a particular use of force is reasonable: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Applying the *Graham* factors, the Court concludes that Farris' decision to tightly grip Stallworth's arm and to force Stallworth's arm behind his back was reasonable. The Court acknowledges that the crime of interfering with a police officer is not necessarily severe and that Stallworth claims that he was not actively

resisting at the time Farris applied the force in question. But Farris was aware that Stallworth was involved in conduct designed to evade detection of, and responsibility for, a potential crime, and thus it would not have been unreasonable for Farris to conclude that Stallworth posed a risk of engaging in additional conduct aimed at evading criminal responsibility – conduct like fleeing from the scene. Likewise, it would not have been unreasonable for Farris to conclude that he needed to apply an extra measure of force – such as a tighter-than-normal grip to Stallworth's arm – to ensure that Stallworth did not attempt to flee as he was being moved to a police car. Under these circumstances – and because the force allegedly applied by Farris was not extreme and was proportional to the need to control a potential flight risk – Farris did not violate Stallworth's right to be free from excessive force.

And even if the force applied by Farris was excessive, Farris would still be entitled to summary judgment on the basis of qualified immunity. Stallworth has not directed the Court to any controlling authority holding that an officer may not apply a tighter-than-normal grip and use arm manipulation to control a suspect who could reasonably be perceived as a flight risk. Thus, Stallworth has not shown that Farris violated a clearly-established constitutional right. Accordingly, Farris would also be entitled to qualified immunity with respect to these additional incidents of force.

## C

Next, Stallworth claims that Defendant Champine failed to protect him from the excessively-tight handcuffs. (*See* Stallworth Resp. Br., ECF #53 at Pg. ID 1168-71.) "A police officer who fails to act to prevent the use of excessive force may still be held liable where (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Floyd v. City of Detroit*, 119 F.3d 425, 429 (6th Cir. 1997) (internal emphasis and quotation marks omitted). When the evidence is viewed in Stallworth's favor, he has satisfied both elements of this test.

A jury could first reasonably find that Champine "had reason to know that excessive force was being used." *Id.* As explained above, police use excessive force with respect to the handcuffing of a suspect where the suspect "(1) … complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the [suspect] experienced some physical injury." *Baynes*, 799 F.3d at 608. Here, Stallworth says that while he and Champine were both in a police car, he told Champine that the handcuffs were so tight that they were hurting his wrists, and Stallworth further says that Champine ignored those complaints. (*See* Stallworth Dep. at 161, 174, 176, 185, 219-220, ECF #45-2 at Pg. ID 871, 874, 877, 885.) Stallworth also submitted evidence that shortly after the incident he sought

medical treatment related to the wrist injuries he claims to have suffered. (*See* ECF ## 54-4 – 54-9.)  A jury could also reasonably conclude that Champine had the opportunity and ability to prevent harm from occurring.

Champine resists this conclusion.  He first argues that he did not ignore Stallworth's complaints because he never "heard" them.  (Champine Mot., ECF #43 at Pg. ID 548-49.)   Indeed, Champine insists that he could not have heard Stallworth's complaints because during the time that they were allegedly together in a police car, his (Champine's) back was to Stallworth, and they were separated by a thick plastic divider in the police car. (*See id.* at Pg. ID 548.)   But Stallworth maintains that once he was in a police car with Champine, he complained repeatedly to Champine about the handcuffs (*see* Stallworth Dep. at 161, 174, 176, 185, 219-220, ECF #45-2 at Pg. ID 871, 874, 877, 885), and Thomas testified that when Stallworth was in the police car, Stallworth was very "loud." (Thomas Dep. at 63-64, ECF #54-2 at Pg. ID 1272.)   On this record, determining whether or not Champine heard Stallworth's complaints requires assessing Champine's credibility, and that is the province of the jury, not the Court on summary judgment. *See Anderson*, 477 U.S. at 255 ("Credibility determinations … are jury functions, not those of a judge....").

Champine next asserts that even if he did hear Stallworth complain about the tightness of the handcuffs, Stallworth cannot maintain an excessive force claim

because it was "only … a matter of minutes" between the time Stallworth first complained and the time Champine removed the cuffs. (Champine Mot., ECF #43 at Pg. ID 548.)  But Champine has not identified sufficient evidence to support a finding that he removed Stallworth's cuffs mere "minutes" after Stallworth complained.  Stallworth insists that he was handcuffed for hours and that at some points he complained about the tightness of the cuffs, and there is no evidence in the record that establishes the time interval between Stallworth's first complaint and Champine's removal of the cuffs. (*See* Stallworth Dep. at 161-62, 164-65, 221-22, ECF #45-2 at Pg. ID 871-72, 886.)  While evidence introduced at trial may ultimately support Champine's timeline and version of events, the Court cannot say that on this record that it was "only a matter of minutes" between the time that Stallworth first complained and Champine removed the handcuffs.

Finally, Champine contends that even if Stallworth could establish the elements of a failure to protect/excessive force claim with respect to the handcuffs, he (Champine) would be entitled to qualified immunity.  In support of this argument, Champine relies heavily upon the Sixth Circuit's decision in *O'Malley v. Flint*, 652 F.3d 662 (6th Cir. 2011).  In *O'Malley*, a plaintiff brought an excessive force claim against a defendant-officer related to injuries the plaintiff sustained after being handcuffed.  The Sixth Circuit held that the defendant-officer was entitled to

qualified immunity because, among other things, the plaintiff had not specifically

asked the officer to loosen the handcuffs:

> In the present case, we hold that it would not have been
> clear to a reasonable officer in [the officer's] position that
> his failure to immediately loosen [the plaintiff's]
> handcuffs was a constitutional violation. *While [the
> plaintiff] claims that he told [the officer] that his handcuffs
> were too tight, [the plaintiff] did not ask [the officer] to
> loosen the handcuffs.* Furthermore, [the plaintiff] did not
> have an obvious physical injury and was handcuffed for
> only about two minutes before [a second officer] arrived
> and escorted him to her vehicle.
>
> Because our precedents fail to notify officers that any
> response to a complaint of tight handcuffing other than an
> immediate one constitutes excessive force, *and because in
> the absence of an obvious physical problem caused by the
> handcuffs or a plea by the defendant to loosen them*, it is
> fair to ask how a reasonable officer should know that a
> problem has occurred, we hold that [the officer's] failure
> to loosen [the plaintiff's] handcuffs did not violate clearly
> established federal law.

*Id.* at 671-72 (internal punctuation and citations omitted) (emphasis added).

Champine insists that he is entitled to qualified immunity under *O'Malley* because

Stallworth never asked for his cuffs to be loosened. The Court disagrees.

O'Malley* does not control here because, as the Sixth Circuit confirmed after

*O'Malley*, that decision is an "outlier" that is inconsistent with "at least 10 published

cases, not to mention additional unpublished cases" from the past twenty years.

*Baynes*, 799 F.3d at 616. Indeed, in published decisions before and after *O'Malley*,

the Sixth Circuit identified the elements of excessive force handcuffing claims and

did not include a specific request to remove the cuffs as a required element. *See*, *e.g.*, *Baynes*, 799 F.3d at 616-17; *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993); *Marvin v. City of Taylor*, 509 F.3d 234, 247-48 (6th Cir. 2007).

Moreover, the facts in *O'Malley* differ from those here (especially when viewed in Stallworth's favor). In *O'Malley*, the court noted that it would be "fair to ask how reasonable officer should know that a problem occurred." *O'Malley*, 652 F.3d at 671. But here, Stallworth repeatedly complained to Champine that the handcuffs were causing injuries to his wrists. Moreover, the plaintiff in *O'Malley* was handcuffed for only "two minutes." *O'Malley*, 652 F.3d at 672. In this case, as noted above, Stallworth says that he was handcuffed for hours and there is no definitive accounting for how long Stallworth was handcuffed.

Finally, it is beyond dispute that "[t]he extent of case law in this Circuit suffices to put a reasonable officer on notice that excessively forceful or unduly tight handcuffing is a constitutional violation under the Fourth Amendment." *Baynes*, 799 F.3d at 614. And Champine acknowledged that he understood this settled rule. He testified that when he received a complaint from a suspect that his handcuffs were too tight, his general practice was to remove or loosen the cuffs. (*See* Champine Dep. at 65-66, ECF #43-5 at Pg. ID 698.) Under these circumstances, when the facts are viewed in Stallworth's favor on summary judgment, Champine is not entitled to qualified immunity.

**D**

In Count II of the First Amended Complaint, Stallworth alleges that Champine falsely arrested him and wrote him a misdemeanor ticket without probable cause. (*See* First Am. Compl. at ¶¶ 31-38, ECF #14 at Pg. ID 72-73.)  "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).  "For a police officer to have probable cause for arrest, there must be facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003) (internal quotation marks omitted).  "Probable cause is assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (internal punctuation omitted).

Here, Champine had probable cause to write Stallworth a ticket for interfering with a police officer.  Champine issued the ticket under City of Pleasant Ridge Ordinance 42-4(a).  That ordinance provides that "[n]o person shall resist any police or firefighter … while in the discharge or apparent discharge of his duty, *or in any way interfere with or hinder him in the discharge of his duty*." (ECF #43-9 at Pg. ID 739.)  Champine had probable cause to believe that Stallworth "interefere[d]" with

or "hinder[ed]" the discharge of his duties here. As described above, after Champine stopped Thomas' Lincoln Towncar, Champine witnessed Thomas and Stallworth switch places in the vehicle. (*See* Champine Dep. at 33-35, ECF #43-5 at Pg. ID 690.) That fact alone was sufficient to establish probable cause that Stallworth was interfering with the discharge of Champine's duties.

Stallworth counters that Champine "knew" that he and Thomas had switched seats and that that knowledge precludes a finding that Champine had probable cause to believe that they committed a crime. (Stallworth Resp. Br., ECF #53 at Pg. ID 1172-73.) But the fact that Stallworth and Thomas did not succeed in tricking Champine does not somehow immunize them from culpability for interfering with a police officer.

Finally, even if Champine did not have probable cause to arrest Stallworth, Champine would be entitled to qualified immunity. "[A]rresting agent[s]" like Champine are "entitled to qualified immunity if [they] could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent[s]." *Everson v. Leis*, 556 F.3d 484, 498-99 (6th Cir. 2009). Here, even if Champine erroneously believed that he had probable cause to write Stallworth the ticket, that conclusion was reasonable. Therefore, for all of the reasons stated above, Champine is entitled to summary judgment on Stallworth's false arrest claim.

**E**

Finally, in Count III of the First Amended Complaint, Stallworth claims that Champine maliciously prosecuted him. (*See* First Am. Compl. at ¶¶ 39-46, ECF #15 at Pg. ID 73-74.)  In order to establish a claim for malicious prosecution, a plaintiff must prove that "(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015).  Stallworth's malicious prosecution claim fails for two reasons.

First, for all of the reasons described above, there was probable cause for Stallworth's criminal prosecution.

Second, Stallworth has not established that he suffered a deprivation of liberty apart from the initial seizure.  Stallworth claims that he had to attend two preliminary hearings in state court before that court dismissed his misdemeanor ticket, and he asserts that his attendance at these hearings was a sufficient additional deprivation of his liberty. (*See* Stallworth Resp. Br., ECF #53 at Pg. ID 1173-74.)  But Stallworth's argument is inconsistent with the Sixth Circuit's decision in *Noonan v. City of Oakland*, 683 Fed. App'x 455 (2017).

In *Noonan*, the plaintiff alleged that the defendant-officer maliciously prosecuted him. The Sixth Circuit held that that claim failed as a matter of law because the plaintiff – who had been required to attend a court proceeding and who had suffered other indignities as a result of a criminal charge – had not suffered a sufficient deprivation of liberty apart from his initial arrest:

> The determinative question in this appeal is whether Noonan suffered a deprivation of his liberty and, as to this question, the facts are not in dispute. To state a claim for malicious prosecution under § 1983, a plaintiff must prove, among other things, that he suffered a deprivation of liberty protected by the Fourth Amendment. Noonan contends that he did. He asserts that the police called him in for questioning (twice) and he had to undergo a polygraph exam; he had to hire a criminal defense attorney; the court required him to attend a status conference; the police/prosecutor withheld his car from him, in impound, for over five months; and the false charges caused substantial embarrassment, personally and professionally, as he had to reveal this prosecution to his employer; all of which inhibited his practice as a lawyer and cost him thousands of dollars. These facts are not in dispute.
>
> […]
>
> Noonan was never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions. In short, despite the aggravation, financial cost, and personal humiliation that Noonan suffered as a result of these false charges, we must conclude as a matter of law that he did not suffer a deprivation of liberty as understood in our Fourth Amendment jurisprudence.

*Id.* at 462-63.

Since having to attend a court status conference in *Noonan* was not a sufficient "deprivation of liberty as understood in [] Fourth Amendment jurisprudence," then Stallworth having to attend two preliminary hearings likewise is insufficient to establish a "deprivation of liberty." *Id.* Moreover, the "aggravation" and "financial cost[s]" to Stallworth pale in comparison to that of the plaintiff in *Noonan*. While Stallworth only had to attend two preliminary court hearings, the plaintiff in *Noonan* had to subject himself to police questioning on two occasions, had to take a polygraph exam, had his car impounded for months, and had to attend at least one court hearing. If the hardships the plaintiff had to endure in *Noonan* were not enough to rise to a Fourth Amendment violation, the substantially more limited consequences that Stallworth faced certainly did not violate the Constitution. Champine is therefore entitled to summary judgment on Stallworth's malicious prosecution claim.

## V

Accordingly, for all of the reasons stated above, **IT IS HEREBY ORDERED** that:

- Defendant Farris' motion for summary judgment (ECF #40) is **GRANTED**;

- Defendant Champine's motion for summary judgment (ECF #43) is **GRANTED IN PART** with respect to Stallworth's claims of false arrest and

malicious prosecution and **DENIED IN PART** with respect to Stallworth's claim of excessive force; and

- Stallworth's municipal liability claim against the City of Ferndale is **DISMISSED WITH PREJUDICE**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 2, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 2, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764
